ADAM C. SHERMAN (SBN 224979)
acsherman@vorys.com
**VORYS, SATER, SEYMOUR AND PEASE LLP**
2211 Michelson Drive, Suite 500
Irvine, CA 92612
Telephone: (513) 723-4680
Facsimile: (513) 723-4680

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ORTHO MOLECULAR PRODUCTS, INC., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VIBRANT SPOT LLC, a limited liability company, and JOHN DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF, FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ortho Molecular Products, Inc. ("OMPI" or "Plaintiff") brings this action against defendants Vibrant Spot LLC and John Does 1-10 (collectively, "Defendants") for: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) unfair and deceptive business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (4) common law trademark infringement and (5) tortious interference with contractual relations. These claims arise from Defendants' misappropriation of OMPI's trademarks in connection with Defendants' unlawful sale on the Internet of materially different and non-genuine

products bearing OMPI's trademarks. In support of its complaint, OMPI alleges as follows:

## PARTIES

1. OMPI is a corporation, organized under the laws of Wisconsin, with its principal place of business in Barrington, Illinois.

2. Vibrant Spot LLC ("Vibrant Spot") is a limited liability company organized under the laws of Montana. According to company documents filed with the Montana Secretary of State, Vibrant Spot's principal and mailing address is 8053 Newmark Avenue, Unit 431, Rosemead, CA 91770 (the "Newmark Avenue Address"). These company documents also identify the Newmark Avenue address as the business mailing address of the LLC's only member. Vibrant Spot operates or assists in the operation of an online storefront on www.amazon.com ("Amazon") that is currently called "Vibrant Spot" and has Merchant ID A11PSCDR8UEXHJ (the "Amazon Storefront").[1] Vibrant Spot's Amazon storefront page also lists the Newmark Avenue Address as its business address. On information and belief, Vibrant Spot has purchased OMPI's products for resale and caused OMPI's products to be shipped to the Newmark Avenue address. Vibrant Spot sells infringing products bearing OMPI's trademarks through the Amazon Storefront and does business throughout the United States through the Amazon Storefront, including to consumers in California and within this judicial district.

3. OMPI believes that other individuals or entities may be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome

[1] Amazon allows storefront operators to change the names of their storefronts, but every storefront on Amazon is assigned a "Merchant ID number" that does not change over time even if the formal "name" of a storefront is changed. The Merchant ID number for Defendants' Amazon Storefront is A11PSCDR8UEXHJ. Even if Defendants change the name of their Amazon Storefront at some time in the future, their storefront can always be accessed at the following link that includes the storefront's Merchant ID number: https://www.amazon.com/sp?seller=A11PSCDR8UEXHJ.

of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to OMPI. Therefore, OMPI sues these defendants by the fictitious names John Does 1 through 10. When the true names, involvement, and capacities of these parties are ascertained, OMPI will seek leave to amend this Complaint accordingly. If OMPI does not identify any such parties, it will dismiss these defendants from this action.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. OMPI's federal claims are predicated on 15 U.S.C. §§ 1114 and 1125(a), and its claims arising under the laws of the State of California are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Vibrant Spot. Vibrant Spot is subject to general personal jurisdiction in California because it is "at home" in California: it identifies the Newmark Avenue address as its principal and mailing address in its Montana Secretary of State filings; it identifies that same address as the address of its sole member; and it holds itself out to the public as located at that address on its Amazon Storefront page.

6. In the alternative, Vibrant Spot is subject to specific personal jurisdiction in California because it has purposefully directed commercial activity into California, including by operating the Amazon Storefront through which it offers for sale and sells the infringing products to California consumers, and by purchasing OMPI's products for resale and causing those products to be shipped to the Newmark Avenue Address in California. OMPI's claims arise out of or relate to these California-directed activities.

7. Venue is properly found in this judicial district under 28 U.S.C. § 1391(b)(1) because Vibrant Spot resides in this district, including because it is subject to personal jurisdiction in this district. Venue is also proper under 28 U.S.C.

§ 1391(b)(2) because a substantial part of the events giving rise to OMPI's claims occurred within this judicial district, including Vibrant Spot's use of the Newmark Avenue Address and its commercial activities tied to the infringing products. The Newmark Avenue address is located within this judicial district.

## FACTUAL ALLEGATIONS

### OMPI and Its Trademarks

8. OMPI's business includes developing, manufacturing, and selling high-quality dietary supplements and other products under the Ortho Molecular Products® brand ("OMPI Products").

9. OMPI allows OMPI Products to be sold to end-user consumers in the United States only by OMPI itself or licensed healthcare providers whom OMPI has expressly authorized to sell OMPI Products ("Authorized Sellers").

10. OMPI allows Authorized Sellers to sell OMPI Products only in approved channels and requires Authorized Sellers to abide by agreements, policies, and other rules that impose requirements relating to quality controls, customer service, and other sales practices (collectively, the "OMPI Rules").

11. OMPI devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation. By allowing end-user consumers to purchase OMPI Products only from Authorized Sellers who are required to follow the quality controls and other requirements in the OMPI Rules, OMPI ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the OMPI brand. In the highly competitive nutritional product and supplement industry, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

12. To promote and protect the OMPI brand, OMPI has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to METHYL CPG® (U.S. Reg. No. 5,163,067); CERENITY® (U.S. Reg. No. 5,158,909); ALPHA BASE® (U.S. Reg. No. 5,135,295); ESTRODIM® (U.S. Reg.

No. 5,027,133); CORE RESTORE® (U.S. Reg. No. 5,027,132); ADRENEVIVE® (U.S. Reg. No. 5,027,131); ADAPTEN-ALL® (U.S. Reg. No. 5,027,130); INFLAMMACORE® (U.S. Reg. No. 4,954,304); ORTHO BIOTIC® (U.S. Reg. No. 4,926,114); ADREN-ALL® (U.S. Reg. No. 4,880,994); MITOCORE® (U.S. Reg. No. 4,819,784); CM VITALS CARDIO METABOLIC SOLUTIONS® (U.S. Reg. No. 4,143,641); CM CORE® (U.S. Reg. No. 4,126,397); TRIPLICHOL® (U.S. Reg. No. 3,080,849); PRO BONO® (U.S. Reg. No. 3,118,025); MEMBRIN® (U.S. Reg. No. 2,916,511); ORTHOMEGA® (U.S. Reg. No. 3,022,978); DIAXINOL® (U.S. Reg. No. 2,817,412); BECAUSE EFFICACY MATTERS® (U.S. Reg. No. 2,896,271); LIFESTYLE MATRIX® (U.S. Reg. No. 4,264,830); EFFICACY THE POWER OF E® (U.S. Reg. No. 3,714,374); and ORTHO MOLECULAR PRODUCTS® (U.S. Reg. No 2,287,524) (collectively the "OMPI Trademarks").

13. The registration for each of the OMPI Trademarks is valid, subsisting, and in full force and effect.

14. OMPI actively uses and markets the OMPI Trademarks in interstate commerce.

15. Consumers recognize the OMPI Trademarks as being associated with OMPI Products.

16. Due to the superior quality and exclusive distribution of OMPI Products, and because OMPI is uniquely recognized as the source of high-quality products, the OMPI Trademarks have considerable value.

**Online Marketplaces and the Challenge They Present to OMPI Product Quality**

17. E-commerce retail sales have exploded over the past decade. From 2009 through the second quarter of 2025, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 16.3%. *E-Commerce Retail Sales as a Percent of Total Sales*, Federal Reserve Bank of St. Louis (Aug. 19, 2025), https://fred.stlouisfed.org/series/ECOMPCTSA.

18. In 2024, consumers spent $1.192 trillion on e-commerce sales, a 7.5% increase from 2023. See Abbas Haleem, *US ecommerce sales in 2024 more than double those of 2019*, Digital Commerce 360 (Mar. 3, 2025), https://www.digitalcommerce360.com/article/us-ecommerce-sales/. The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2024, United States consumers spent more than $500 billion in ecommerce sales on Amazon and Walmart.

19. While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

20. Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them. Instead, consumers must trust that the product they receive from an online order will be of the quality they expect and typically receive from the brand owner.

21. Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller. As a result, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

22. Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers. It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels. *See* Scott Cohn, *Greed Report: Your quest for savings could land you in the "gray market,"* CNBC, Sept. 8,

2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html; Alexandra Berzon et al., *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products*, THE WALL STREET JOURNAL, Aug. 23, 2019, https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990. It is also common for unauthorized sellers to sell products that are previously used—including products retrieved from dumpsters—as "new" on online marketplaces. *See* Khadeeja Safdar et al., *You Might Be Buying Trash on Amazon—Literally*, THE WALL STREET JOURNAL, Dec. 18, 2019, https://www.wsj.com/articles/you-might-be-buying-trash-on-amazonliterally-11576599910.

1. The problem of sales of poor-quality products on online marketplaces has become so serious that, in November 2019, the United States Senate Finance Committee issued a bipartisan report on the issue. The Committee found that the rise of e-commerce has fundamentally changed how consumers shop for products and that, as e-commerce has grown, products that "violate a right holder's trademark or copyright" are being sold at an accelerating rate on e-commerce platforms. The Committee concluded that these sales are a "significant threat" to rights holders' brands and to consumers, and that under current law it is up to rights holders to protect their intellectual property rights online. *See* Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019, https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf.

2. In 2020, the Department of Homeland Security published a report noting that consumers on online marketplaces cannot rely on traditional "red flag" indicators to evaluate products for quality attributes, such as authenticity, and "have been surprised to discover that upon completion of an online sales transaction, that the

order will be fulfilled by an unknown third-party seller." Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, at 14-15, 38. To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id.* at 35.

3. In all annual reports to its shareholders since at least 2018, Amazon acknowledged that third party sellers on its marketplace are selling products that are "materially different" from the product that was described to consumers. *See, e.g.,* Amazon.com, Inc., Annual Report (Form 10-K), at 8 (Feb. 7, 2025), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/e42c2068-bad5-4ab6-ae57-36ff8b2aeffd.pdf. Amazon conceded that these actions are "violating the proprietary rights of others" and warned its investors that it could be liable for "unlawful activities" of Amazon third-party sellers. *See id.*

4. Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic. A brand owner's inability to exercise control over the quality of its products can present serious risks to the health and safety of consumers.

5. The structure, construction, and user interface of online marketplaces also pose threats to a brand owner's ability to maintain its goodwill, reputation, and brand integrity.

6. When purchasing products on an online marketplace, customers are ordinarily not informed whether a seller of a product is authorized by the brand owner. Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the brand owner or, at minimum, from an authorized seller that is selling under the brand owner's oversight and with the brand owner's approval. Consumers who purchase on Amazon are particularly

likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing that states "Brand [name of brand]" immediately under the title of the product, even though many products are sold on Amazon by unauthorized sellers that have no relationship with the brand owner.

7. For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the brand owner's quality controls.

8. When a consumer purchases on an online marketplace and receives a product that is damaged, defective, or of otherwise poor quality, the consumer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

9. Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products: online product reviews. Any consumer who is dissatisfied with a product received can post a review on the marketplace for all other consumers across the world to see. These reviews, which often remain permanently attached to products, will often criticize the brand rather than the marketplace seller that sold the product.

10. Online product reviews significantly impact a brand's reputation. Survey results show that 82% of United States adults "sometimes" consult online reviews for information when they consider buying a new product online, and 40% "always" or "almost always" consult such reviews. Aaron Smith & Monica Anderson, *Online reviews*, PEW RESEARCH CENTER, Dec. 19, 2016, http://www.pewinternet.org/2016/12/19/online-reviews/.

11. Studies and surveys consistently show that consumers place extraordinary trust in online product reviews. For instance, research has shown that 42% of online consumers now trust online reviews as much as personal recommendations from friends and family. *See* Sammy Paget, *Local Consumer Review Survey 2025*, BRIGHTLOCAL, https://www.brightlocal.com/research/local-

consumer-review-survey/. Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has begun suing companies who post fake reviews of their products on online marketplaces. Megan Henney, FTC cracking down on fake Amazon reviews, FOX BUSINESS, Feb. 28, 2019, https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-reviews (quoting a press release from the director of the FTC).

12. Consumers also pay special attention to negative online reviews of products because negative reviews are generally outnumbered by positive reviews and consumers believe negative reviews are particularly trustworthy due to their scarcity. *See* Caroline Beaton, *Why You Can't Really Trust Negative Online Reviews*, THE NEW YORK TIMES, June 13, 2018 https://www.nytimes.com/2018/06/13/smarter-living/trust-negative-product-reviews.html. According to one study, 85% consumers will intentionally seek out negative reviews when shopping online. Faith Hinz, *The Growing Power of Reviews*, POWERREVIEWS, 2018, https://www.powerreviews.com/wp-content/uploads/2018/03/The-Growing-Power-of-Reviews.pdf. As a result, brands are especially harmed when consumers leave negative product reviews after purchasing from an unauthorized seller because the reviews will be widely viewed and deemed to be particularly accurate in describing a product's quality.

13. Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a brand owner's reputation and goodwill.

**OMPI Has Implemented Quality Controls Throughout Its Authorized Channels of Distribution to Combat the Problems Presented By Online Marketplaces and Ensure Customers Receive the Genuine, High-Quality Products They Expect From OMPI**

14. To protect itself and consumers from harms associated with the unauthorized sale of low-quality products, OMPI implemented a quality control program that applies to all of its Authorized Sellers, including sellers that sell to end

user consumers in a brick-and-mortar clinical setting and sellers that sell to end users online.

15. The goals of OMPI's quality control program are to minimize the likelihood that poor quality products reach consumers and ensure that consumers who purchase OMPI Products, including consumers who buy online, receive the high-quality products and services they expect from products sold under the OMPI brand. By preventing consumers from receiving poor-quality products, the program both protects consumers from confusion and also protects the value and goodwill associated with the OMPI Trademarks.

16. OMPI abides by its quality control requirements and requires its Authorized Sellers to abide by them as well.

17. OMPI's ability to exercise its quality controls is essential to the integrity and quality of OMPI Products, as well as the value of the OMPI Trademarks and other intellectual property.

18. OMPI's quality controls begin with allowing OMPI Products to be purchased by end-user consumers only from OMPI itself or from Authorized Sellers.

19. The OMPI Rules require Authorized Sellers to purchase OMPI Products only from OMPI directly or from a distributor authorized by OMPI ("Authorized Distributors"). This restriction ensures that the chain of custody can be established for all OMPI Products sold to consumers by Authorized Sellers, and thus prevents unsafe products, secondhand goods, or other low-quality products from entering into the distribution chain.

20. The OMPI Rules also limit to whom and where Authorized Sellers may sell OMPI Products. To prevent persons outside of OMPI's quality controls from acquiring and reselling OMPI Products, the OMPI Rules prohibit Authorized Sellers from selling OMPI Products to any third party who intends to resell the products. Authorized Sellers are permitted to sell OMPI Products only to end-user consumers who have an established practitioner-patient relationship with the Authorized Seller.

21. Given the many perils of unauthorized online sales as described above, Authorized Sellers are also prohibited from selling OMPI Products on any website not owned by the Authorized Seller itself, OMPI, or an Authorized Distributor without written approval from OMPI.

22. These restrictions are essential to OMPI's ability to exercise its quality controls over OMPI Products because they prevent unauthorized sellers from obtaining and reselling OMPI Products and allow OMPI to know where all of its products are being sold online by Authorized Sellers. If a quality issue arises through an online sale, OMPI can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately. OMPI is unable to take such action against unauthorized sellers because it does not know who those sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

23. In addition to restricting where and how Authorized Sellers can sell OMPI Products, the OMPI Rules also require Authorized Sellers to follow numerous quality control requirements related to the inspection, handling, and storage of OMPI Products.

24. To ensure that customers receive the genuine and high-quality products they expect from OMPI, the OMPI Rules require Authorized Sellers to inspect all OMPI Products for any damage, defects, broken seals, evidence of tampering, and other non-conformance. Authorized Sellers are prohibited from selling such products and are required to report any discovered defects to OMPI.

25. Authorized Sellers must also regularly inspect their inventory of OMPI Products for expired or soon-to-be expired products. Authorized Sellers are prohibited from selling any expired OMPI Products and must destroy or dispose such products in accordance with OMPI's instructions and applicable law.

26. The OMPI Rules also require that Authorized Sellers comply with OMPI's instruction regarding storage and handling of OMPI Products. These

requirements help ensure that OMPI Products are stored properly and are not damaged prior to being shipped to the consumer.

27. To avoid consumer confusion and ensure that customers receive genuine OMPI Products, Authorized Sellers must sell OMPI Products in their original packaging and are prohibited from relabeling, repackaging, or altering OMPI Products or any accompanying label or literature.

28. Authorized Sellers are also prohibited from tampering with, defacing, or otherwise altering any identifying information on OMPI Products, including any serial number, QR code, UPC code, batch or lot code, SKU, or other identifying information.

29. The OMPI Rules give OMPI the right to monitor and audit Authorized Sellers by inspecting their facilities and records relating to OMPI Products, to ensure their compliance with OMPI's quality control requirements. If OMPI discovers that an Authorized Seller is failing to follow the OMPI Rules, OMPI has the right to cease selling its products to the Authorized Seller and to suspend or terminate its status as an Authorized Seller of OMPI Products.

30. Authorized Sellers also must cooperate with OMPI with respect to any product recall or other consumer safety information dissemination effort conducted by OMPI regarding OMPI Products.

31. Authorized Sellers must ensure that any third-party logistics provider engaged to store inventory or fulfill orders for OMPI Products is aware of and complies with the OMPI Rules. Authorized Sellers must ensure that any fulfillment service segregates all OMPI Products by seller so that no OMPI Products from an Authorized Seller are commingled with any third party's products. These requirements ensure that the specific products that the Authorized Seller has that meet OMPI's quality standards will be those that are shipped to the customer in fulfillment of an order, rather than other products that are outside of OMPI's quality controls.

///

32. The OMPI Rules also require Authorized Sellers to provide various customer services to their customers. For example, Authorized Sellers must familiarize themselves with the features of all OMPI Products marketed for sale so they can advise customers on the selection and safe use of OMPI Products, offer ongoing support to consumers, and promptly respond to consumer inquiries before and after the sale of genuine OMPI Products.

33. OMPI's quality control and customer service requirements are legitimate and substantial and have been implemented so that OMPI can control the quality of goods manufactured and sold under the OMPI Trademarks, to protect consumers as well as the value and goodwill associated with the OMPI Trademarks.

34. OMPI's quality control and customer service requirements are also material, as they are designed to protect consumers and prevent them from receiving poor quality and unsafe products. Consumers would find it material and relevant to their purchasing decision to know whether an OMPI Product they were considering buying was being sold by an Authorized Seller who is subject to OMPI's quality control and customer service requirements or whether the product is being sold by an unauthorized seller who does not abide by OMPI's quality controls and over whom OMPI is unable to exercise its quality controls.

**Given the Flood of Poor Quality Products Being Sold Online and Consumers' Inability to Inspect Such Products Before Purchase, OMPI Imposes Additional Requirements on Its Authorized Sellers Who Sell Online**

35. Products sold online are more susceptible to quality and authenticity problems as consumers cannot see products before buying them. These problems are especially severe on online marketplaces such as Amazon, where sellers can conceal the fact that they are an unauthorized seller and many sellers may share a single product listing page.

///

36. Given these heightened risks to consumer satisfaction and the value of its trademarks that are posed by online sellers, OMPI imposes additional quality control requirements on all of its Authorized Sellers who sell OMPI Products online.

37. The OMPI Rules allow Authorized Sellers to sell OMPI Products to end-user consumers only through "Permissible Websites," "Virtual Dispensaries," and "Authorized Websites." These rules allow OMPI to oversee all Authorized Sellers who sell OMPI Products online.

38. A "Permissible Website" is a website or mobile application that: (1) is operated by an Authorized Seller in the Authorized Seller's own legal name or registered fictitious name, (2) has been disclosed to OMPI during account onboarding or via email; (3) is not a third-party storefront on an online marketplace website; and (4) is operated in compliance with the OMPI Rules.

39. A "Virtual Dispensary" is a website, micro-site, or mobile application that: (1) is operated by OMPI or an Authorized Distributor in its legal name or registered fictitious name; (2) is used to facilitate orders of OMPI Products by end users on behalf of the Authorized Seller; and (3) requires the end user to create an account and login to purchase OMPI Products.

40. Authorized Sellers must receive prior written approval from OMPI before they can sell OMPI Products on any website that does not meet the criteria of a Permissible Website or Virtual Dispensary. A website that OMPI permits an Authorized Seller to use through this process is called an "Authorized Website."

41. The OMPI Rules impose numerous additional requirements on Authorized Sellers who sell OMPI Products on Permissible Websites or Authorized Websites (collectively, "Authorized Online Sellers").

42. For example, Authorized Online Sellers must use images of OMPI Products that are provided or approved by OMPI and keep product descriptions up to date.

///

43. The OMPI Rules prohibit Authorized Online Sellers from selling anonymously and instead require them to state their business name and current contact information on all websites where they sell, while not giving any appearance that the website is operated by OMPI or another third party. Authorized Online Sellers must include a statement on all websites reflecting OMPI Products stating that the website is not owned or operated by OMPI. These requirements allow consumers of OMPI Products to understand the nature of the seller from whom they are purchasing and enable consumers to contact the seller if any quality issues arise. These requirements also allow OMPI to protect the public from the sale of poor quality or counterfeit OMPI Products because it allows for easy detection of any Authorized Online Seller that sells poor quality goods.

44. Authorized Online Sellers must require that end users sign in to the website with a username and password to purchase OMPI Products.

45. At OMPI's request, Authorized Online Sellers must provide access to and copies of all web pages that make up any Permissible Website where Authorized Online Sellers are selling OMPI Products.

46. Except where an Authorized Online Seller has entered into a drop-shipment arrangement with OMPI, Authorized Online Sellers are prohibited from permitting orders to be filled in any way that results in shipped OMPI Products coming from stock other than the Authorized Online Seller.

47. All websites where Authorized Online Sellers sell OMPI Products must have a mechanism for receiving customer feedback, and Authorized Online Sellers must take appropriate steps to address any feedback received. Authorized Online Sellers must also: (i) keep copies of all information related to customer feedback regarding Authorized Online Sellers' products and their responses; (ii) provide this information to OMPI upon request; and (iii) cooperate with OMPI in investigating negative online reviews related to sales of OMPI Products.

///

48. The additional quality control requirements that OMPI exercises over online sales of its products are legitimate and substantial and have been implemented to allow OMPI to carefully control the quality of OMPI Products that are sold online and quickly address any quality issues that arise.

49. OMPI's additional quality controls are also material, as they have been implemented to ensure that consumers purchasing OMPI Products online receive genuine, high-quality OMPI Products that abide by OMPI's quality controls. Consumers purchasing OMPI Products online would find it relevant to their purchasing decision to know whether a product they are buying is vended by an Authorized Online Seller who is subject to, and abides by, OMPI's quality controls.

**Genuine OMPI Products Come with OMPI's Guarantee;**
**Products Sold By Defendants Do Not**

50. OMPI also provides customers who purchase genuine OMPI Products from Authorized Sellers with OMPI's 45-Day Ortho Guarantee (the "OMPI Guarantee").

51. The OMPI Guarantee provides that if a patient is not satisfied with a product purchased from an Authorized Seller, the patient may request a refund or replacement product within 45 days from purchase. The complete OMPI Guarantee can be viewed at https://www.orthomolecularproducts.com/service/returnpolicy and is incorporated herein.

52. OMPI extends the OMPI Guarantee only to products that were sold to end users from Authorized Sellers or by OMPI itself. Because products sold by unauthorized sellers are not subject to OMPI's quality controls and OMPI cannot ensure the quality of such products, the OMPI Guarantee does not cover OMPI Products sold by unauthorized resellers, including Defendants.

///

///

///

**Defendants Are Not Authorized Sellers and Are Illegally Selling Non-Genuine Products Bearing the OMPI Trademarks**

53. Because the unauthorized sale of OMPI Products over the Internet threatens the reputation and goodwill associated with the OMPI Trademarks, OMPI actively monitors the sale of its products online.

54. In the course of this monitoring, OMPI discovered that a high volume of products bearing the OMPI Trademarks were being illegally sold on Amazon through a storefront called "Vibrant Spot."

55. The Amazon Storefront lists its "Business Name" as Vibrant Spot LLC and lists its "Business Address" as the Newmark Avenue Address. *See* https://www.amazon.com/sp?seller=A11PSCDR8UEXHJ.

56. Through investigation, OMPI discovered that there is a limited liability company organized under the laws of Montana called "Vibrant Spot LLC." Corporate records filed with the Montana Secretary of State list the Newmark Avenue Address as the principal and mailing address for Vibrant Spot.

57. On or around October 8, 2024, OMPI sent a cease-and-desist to Vibrant Spot. OMPI's letter explained that Vibrant Spot was infringing the OMPI Trademarks through its online sales and causing harm to OMPI. OMPI's letter also explained that OMPI only allows its products to be sold by OMPI itself and healthcare practitioners approved by OMPI and demanded that Vibrant Spot cease advertising and selling products bearing the OMPI Trademarks.

58. Vibrant Spot did not respond to OMPI's October 8, 2024 letter. On November 6, 2024, OMPI sent another letter to Vibrant Spot, reiterating the demands in its first letter and explaining that all resellers, including OMPI's Authorized Sellers, are prohibited from selling OMPI Products on Amazon or other marketplaces. OMPI also informed Vibrant Spot that its acquisition and resale of products tortiously interfered with OMPI's agreements with its Authorized Sellers.

///

59. Vibrant Spot did not respond to OMPI's November 6, 2024. On November 13, 2024, OMPI sent a third letter to Vibrant Spot reiterating its demands and threatening to file a lawsuit against Vibrant Spot for its continued infringement of the OMPI Trademarks and tortious interference with OMPI's agreements with its Authorized Sellers.

60. As of the time of filing, Defendants have not responded to any of Plaintiffs' cease-and-desist letters and have continued to advertise and sell products bearing the OMPI Trademarks. Defendants are not Authorized Sellers of OMPI Products and are not subject to, and do not comply with, the OMPI Rules or the quality controls that OMPI imposes on its Authorized Sellers.

61. Defendants have sold—and continue to sell—a high volume of infringing products bearing the OMPI Trademarks through their Amazon Storefront.

62. Upon information and belief, through their storefront on the highly interactive Amazon website, Defendants accept and fulfill orders in California for products bearing the OMPI Trademarks and cause substantial quantities of infringing products bearing the OMPI Trademarks to be shipped to persons located in California through the regular course of business.

**Defendants Are Infringing the OMPI Trademarks by Selling Products Bearing the OMPI Trademarks That Are Not Subject To, Do Not Abide By, and Interfere With OMPI's Quality Control and Customer Service Requirements**

63. Defendants are not Authorized Sellers of OMPI Products, are not subject to OMPI's quality controls, and do not comply with the OMPI Rules or the quality controls that OMPI imposes on its Authorized Sellers.

64. Defendants, without authorization from OMPI, have sold—and continue to sell—products bearing the OMPI Trademarks through their Amazon Storefront. Defendants may also be selling products through additional channels that OMPI has not yet discovered and cannot discover until it is able to take discovery.

///

65. OMPI has implemented quality control and customer service requirements throughout its authorized channels of distribution. The products sold by Defendants are not genuine products because they are not subject to, do not abide by, and interfere with OMPI's quality control and customer service requirements that Authorized Sellers must follow.

66. OMPI's quality control and customer service requirements are legitimate and substantial. As a result of Defendants' sales of products that are not subject to, do not abide by, and interfere with these requirements, OMPI has lost control of the quality of goods that bear its trademarks.

67. Defendants do not abide by OMPI's quality control requirements because they are not licensed healthcare physicians and have not provided OMPI with their business information nor given OMPI an opportunity to vet them to determine if they meet OMPI's high standards for Authorized Sellers. Instead, Defendants sell products online without OMPI's authorization or oversight.

68. Defendants do not comply with OMPI's quality control requirements—and interfere with OMPI's quality controls—because they have not disclosed to OMPI where they sell OMPI Products online. Defendants also do not provide customer feedback to OMPI that relates to their sales of products bearing the OMPI Trademarks or cooperate with OMPI in investigating negative online reviews relating to their sales of products bearing the OMPI Trademarks, as Authorized Online Sellers are required to do. These actions prevent OMPI from being able to detect, address, and resolve any quality control issues or negative reviews that arise out of Defendants' sale of products bearing the OMPI Trademarks.

69. Defendants also do not comply with OMPI's quality control requirements—and interfere with OMPI's quality controls—because they: (1) have not disclosed to OMPI where they acquire products that bear the OMPI Trademarks; and (2) have not given OMPI the right to audit and inspect their facilities and records. As a result, among other things, OMPI cannot know if Defendants are: (i) sourcing

products only from authorized sources; (ii) properly inspecting and storing products, and not selling poor quality products; (iii) selling products only in official and unaltered OMPI packaging; (iv) not permitting their products to be commingled with products owned by other sellers, such that a customer could receive a product owned by another seller when purchasing from Defendants; and (v) providing exceptional customer service and responding appropriately to feedback received from customers. OMPI also cannot obtain Defendants' assistance with any recall or consumer-safety information efforts that may arise related to any products they are selling or have sold in the past.

70. Customers have written reviews of Defendants' Amazon Storefront in which they complained of exceptionally poor service from Defendants and of receiving products that were damaged, different from ordered, and allegedly counterfeit. Although Amazon has added comments to some of these complaints stating that Amazon takes "responsibility" for the "fulfillment experience[s]" described in the complaints, the issues and complaints that customers address in these reviews are clearly the fault of Defendants rather than a fulfillment problem, such as delivering a product to the wrong address, that could be attributable to Amazon rather than Defendants:

★☆☆☆☆ "Delivered it with broken. But still no response"

By Heechoul Park on October 3, 2025.

★☆☆☆☆ "~~Fake pills .. doesn't have safety seal~~"

By Brie on December 31, 2023.

**Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

★☆☆☆☆ "They sent a different supplement than I ordered"

By Hailey on March 28, 2024.

★☆☆☆☆ "I did not order this"

By Linda Chambers on September 30, 2025.

> ★☆☆☆☆ "The liquid in the bottle is all over the place"
>
> By Amazon Customer on December 30, 2024.

> ★☆☆☆☆ "~~You sent the wrong item. I did not receive what I ordered and I still need the product I ordered~~"
>
> By ben forkum on October 21, 2023.
>
> **Message from Amazon:** This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience.

71. These reviews are only a sample of the negative reviews that customers have written about Defendants and their Amazon Storefront, and they are typical of the complaints made about the products sold and the customer service provided by unauthorized sellers on online marketplaces. OMPI allows its products to be sold only by OMPI or Authorized Sellers who are subject to its quality controls to prevent customers from suffering experiences like those described in the above complaints about Defendants.

72. The negative reviews of Defendants' Amazon Storefront show that Defendants are very likely not carrying out the quality-control inspection, storage, or handling requirements that OMPI requires Authorized Sellers to follow for OMPI Products. Instead, Defendants are likely selling products bearing the OMPI Trademarks to consumers that are previously used, tampered with, not sealed, missing components, damaged, defective, and nonfunctional rather than removing such products from their inventory. These sales cause customers to write highly negative reviews of OMPI Products that harm OMPI's reputation and hurt the placement of OMPI Products in search results.

73. Defendants' failure to abide by the OMPI Rules prevents OMPI from exercising control over the quality of products Defendants sell bearing the OMPI Trademarks. Unlike with its Authorized Online Sellers, OMPI cannot monitor or

audit Defendants to ensure they are complying with its quality controls or take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

74. Through their unauthorized use of the OMPI Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same quality controls as genuine OMPI Products. In reality, however, the products that Defendants sell are materially different from genuine OMPI Products—and are not genuine products—because they are not subject to, do not abide by, and interfere with OMPI's quality control and customer service requirements that Authorized Sellers must follow.

**Defendants Are Infringing the OMPI Trademarks by Selling Products Bearing the OMPI Trademarks That Do Not Come With the OMPI Guarantee**

75. As set forth above, genuine OMPI Products purchased from Authorized Sellers come with the OMPI Guarantee. OMPI, however, does not provide the OMPI Guarantee with products purchased from unauthorized sellers because OMPI cannot ensure the quality of products sold by sellers that are not subject to its quality controls.

76. Because Defendants are not Authorized Sellers and are thus not subject to OMPI's quality control requirements, the products bearing the OMPI Trademarks that Defendants sell do not come with the OMPI Guarantee.

77. Because the products Defendants sell do not come with the OMPI Guarantee, they are materially different from genuine OMPI Products.

78. The OMPI Guarantee is a material component of genuine OMPI Products. Consumers considering whether to purchase OMPI Products would find it relevant to their purchasing decision to know whether the product they are purchasing are covered by the OMPI Guarantee. Consumers who purchase OMPI Products with the OMPI Guarantee receive the peace of mind that they are receiving a high-quality product, that OMPI stands behind the product, and that if they are not satisfied, they can receive a product replacement or a refund.

79. Defendants' unauthorized sale of non-genuine products bearing the OMPI Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine OMPI Products that come with the OMPI Guarantee when, in fact, they are not.

**Defendants Are Tortiously Interfering With OMPI's Agreements With Its Authorized Sellers**

80. As discussed, OMPI allows OMPI Products to be sold to end user consumers only by OMPI itself and Authorized Sellers.

81. OMPI has entered into agreements with all of its Authorized Sellers that prohibit Authorized Sellers from selling OMPI Products to entities or persons who Authorized Sellers know, or reasonably should know, are going to resell the products.

82. Defendants have sold and are continuing to sell a high volume of products bearing the OMPI Trademarks on the Internet. OMPI has not itself knowingly sold any OMPI Products to Defendants. Upon information and belief, Defendants have purchased products from Authorized Sellers, under the guise of being a patient and end user of the products, for the purpose of reselling them on the Internet.

83. Through investigation, OMPI discovered a series of invoices for OMPI Products dated between March 20, 2024, and November 15, 2024. The invoices are addressed to Youjie Liu, sole member of Vibrant Spot, at the Newmark Avenue Address. Upon information and belief, Defendants purchased the invoiced products with the intent to resell them.

84. By purchasing products from Authorized Sellers and then reselling them on the Internet, Defendants caused and induced Authorized Sellers to breach their agreements with OMPI.

85. Defendants have known that OMPI's contracts with its Authorized Sellers prohibit Authorized Sellers from selling products to unauthorized sellers, such

as Defendants, whom the Authorized Sellers know or have reason to know are going to resell the products.

86. Defendants have known of this prohibition since at least approximately November 6, 2024. On that date, OMPI sent a cease-and-desist letter to Vibrant Spot explaining this prohibition and notifying Vibrant Spot that when it purchased OMPI Products from OMPI's Authorized Sellers, it was interfering with OMPI's agreements with its Authorized Sellers.

87. OMPI's letter also informed Defendants that, by purchasing OMPI Products from an Authorized Seller for the purpose of reselling them, they were causing a breach of the agreement between OMPI and its Authorized Sellers and interfering with OMPI's agreements and business relationships.

88. OMPI's letter also advised Defendants that if they continued to acquire products from OMPI's Authorized Sellers and then resold the products, they would be liable for tortiously interfering with OMPI's contracts and business relationships with its Authorized Sellers.

89. Despite being provided this information, upon information and belief, Defendants intentionally, knowingly, and willfully interfered with OMPI's agreements with its Authorized Sellers by inducing Authorized Sellers to breach their agreements and sell products to Defendants that Defendants resold on the Internet.

90. In interfering with OMPI's agreements, Defendants acted without justification and with a wrongful purpose. Defendants purchased OMPI Products from Authorized Sellers —and in so doing, instigated a breach of Authorized Sellers' agreements with OMPI—so that Defendants could unlawfully infringe upon and materially damage the value of the OMPI Trademarks by reselling the products on the Internet, thereby committing an independent tort.

91. Defendants are not parties to the agreements they caused Authorized Sellers to breach.

///

**OMPI Has Suffered Substantial Harm as a Result of Defendants' Conduct**

92. As set forth above, the unauthorized sale of products bearing the OMPI Trademarks by unauthorized sellers such as Defendants has caused significant harm to the OMPI brand.

93. When a consumer receives a non-genuine, damaged, or poor-quality product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with OMPI. As such, Defendants' ongoing sale of non-genuine products bearing the OMPI Trademarks harms OMPI and its brand.

94. OMPI has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

95. OMPI has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

96. OMPI is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell non-genuine products bearing the OMPI Trademarks, causing continued irreparable harm to OMPI's reputation, goodwill, relationships, intellectual property, and brand integrity.

97. Additionally, OMPI is entitled to injunctive relief requiring Defendants to return or destroy infringing products because without that remedy, Defendants may evade injunctive relief by transferring their infringing products to another reseller.

98. Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

99. Defendants' willful infringement of the OMPI Trademarks and continued pattern of misconduct demonstrate intent to harm OMPI.

///

**FIRST CAUSE OF ACTION**

**Trademark Infringement**

**15 U.S.C. §§ 1114 and 1125(a)(1)(A)**

100. OMPI hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

101. OMPI is the owner of the OMPI Trademarks.

102. OMPI has registered the OMPI Trademarks with the United States Patent and Trademark Office.

103. The OMPI Trademarks are valid and subsisting trademarks in full force and effect.

104. Defendants willfully and knowingly used, and continue to use, the OMPI Trademarks in interstate commerce for the purpose of selling non-genuine products bearing the OMPI Trademarks without OMPI's consent.

105. The products bearing the OMPI Trademarks that Defendants sell are not authorized for sale by OMPI.

106. Defendants' use of the OMPI Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the OMPI Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with OMPI when they are not.

107. Defendants' use of the OMPI Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine OMPI Products.

108. The products sold by Defendants are not, in fact, genuine OMPI Products. The products sold by Defendants are materially different from genuine OMPI Products because, among other reasons, they are not covered by the OMPI

Guarantee and are not subject to, do not abide by, and interfere with OMPI's quality control requirements.

109. Defendants' unauthorized use of the OMPI Trademarks has infringed upon and materially damaged the value of the OMPI Trademarks, and caused significant damage to OMPI's business relationships.

110. As a proximate result of Defendants' actions, OMPI has suffered, and will continue to suffer, immediate and irreparable harm. OMPI has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

111. OMPI is entitled to recover its damages caused by Defendants' infringement of the OMPI Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

112. OMPI is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, OMPI will suffer irreparable harm.

113. OMPI is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the OMPI Trademarks.

## SECOND CAUSE OF ACTION

### Unfair Competition

### 15 U.S.C. § 1125(a)(1)(A)

114. OMPI hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

115. As set forth above, Defendants are selling non-genuine products bearing the OMPI Trademarks that are materially different from genuine OMPI Products.

116. Defendants' sale of non-genuine products bearing the OMPI Trademarks is likely to cause consumer confusion and lead consumers to believe that those products are affiliated with, connected with, associated with, sponsored by, or

approved by OMPI when they are not.

117. Defendants' sale of non-genuine products bearing the OMPI Trademarks is likely to cause consumer confusion and lead consumers to believe that the products are genuine OMPI Products when they are not.

118. Defendants' conduct constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

119. OMPI is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' unfair competition and, unless Defendants are permanently enjoined, OMPI will suffer irreparable harm.

120. OMPI is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith engaged in unfair competition.

## THIRD CAUSE OF ACTION

**Unfair and Deceptive Business Practices**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

121. OMPI hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

122. OMPI is the owner of the OMPI Trademarks.

123. OMPI has registered the OMPI Trademarks with the United States Patent and Trademark Office.

124. The OMPI Trademarks are valid and subsisting trademarks in full force and effect.

125. Defendants willfully and knowingly used, and continue to use, the OMPI Trademarks in interstate commerce, including through their product listings on Amazon, for the purpose of advertising, promoting, and selling products bearing the OMPI Trademarks without OMPI's consent.

///

///

126. Defendants' advertisements and promotions of products unlawfully using the OMPI Trademarks have been disseminated to the relevant purchasing public.

127. Defendants use the OMPI Trademarks with the intent that consumers will rely on their use of the OMPI Trademarks and believe that they are selling genuine OMPI Products.

128. OMPI has not authorized Defendants to advertise, promote, or sell products bearing the OMPI Trademarks.

129. The products Defendants advertise, promote, and sell bearing the OMPI Trademarks are not covered by the OMPI Guarantee.

130. OMPI has established substantial quality control procedures that genuine OMPI Products must comply with.

131. OMPI abides by these quality control procedures and requires all Authorized Sellers to abide by them as well. OMPI's quality controls are legitimate and material, as they protect consumers from receiving poor quality products that could harm them. When a consumer considers whether to purchase a product bearing the OMPI Trademarks, the applicability of OMPI's quality controls to the product is relevant and material to the consumer's purchasing decision.

132. The products bearing the OMPI Trademarks that Defendants advertise, promote, and sell are not subject to, do not abide by, and interfere with OMPI's quality controls and customer service requirements.

133. Because the products Defendants advertise, promote, and sell bearing the OMPI Trademarks are not covered by the OMPI Guarantee, and are not subject to, do not abide by, and interfere with OMPI's quality controls and customer service requirements, the products Defendants sell are materially different from genuine OMPI Products sold by Authorized Sellers.

134. Because the products Defendants advertise, promote, and sell bearing the OMPI Trademarks are materially different from OMPI Products sold by Authorized

Sellers, the products Defendants sell are not genuine OMPI Products.

135. Defendants' unauthorized advertisement, promotion, and sale of products bearing the OMPI Trademarks interfere with OMPI's quality controls and ability to exercise quality control over products bearing the OMPI Trademarks.

136. Defendants' unauthorized advertisement, promotion, and sale of products bearing the OMPI Trademarks are likely to cause confusion, cause mistake, and/or deceive consumers because Defendants' use of the OMPI Trademarks suggests that the products Defendants offer for sale are subject to and compliant with OMPI's quality controls when, in fact, they do not and are not. Defendants' unauthorized advertisement, promotion, and sale of products bearing the OMPI Trademarks are likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the OMPI Trademarks suggests that the products Defendants offer for sale are genuine OMPI Products when, in fact, they are not.

137. Defendants' unauthorized advertisement, promotion, and sale of products bearing the OMPI Trademarks are likely to cause confusion or misunderstanding among consumers because Defendants' use of the OMPI Trademarks suggests that the products Defendants offer for sale are sourced from, sponsored by, approved by, or certified by OMPI when, in fact, they are not.

138. Defendants' unauthorized and deceptive use of the OMPI Trademarks is material and likely to influence customers to purchase the products Defendants sell, as consumers are likely to believe that products Defendants advertise using the OMPI Trademarks are genuine OMPI Products that are subject to, and abide by, OMPI's quality-control requirements and come with benefits associated with genuine OMPI Products when, in fact, they do not.

139. Defendants' unauthorized use of the OMPI Trademarks in advertising and otherwise infringes the OMPI Trademarks.

140. Defendants have also knowingly and willfully obtained OMPI Products through unlawful means and in violation of OMPI's agreements with its Authorized

Sellers. Specifically, Defendants have continued to acquire OMPI Products through Authorized Sellers for purposes of reselling those products on the Internet despite knowing that OMPI's agreements with its Authorized Sellers prohibit them from selling products to third parties for purposes of unauthorized resale.

141. Defendants' actions constitute unfair, deceptive, untrue, and/or misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

142. Defendants' actions constitute unlawful, unfair, and/or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

143. As a result of Defendants' unlawful actions, OMPI has suffered, and continues to suffer, irreparable harm. OMPI has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

144. OMPI is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, OMPI will suffer irreparable harm.

## FOURTH CAUSE OF ACTION

### Common Law Trademark Infringement

145. OMPI hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

146. OMPI is the owner of the OMPI Trademarks.

147. OMPI has registered the OMPI Trademarks with the United States Patent and Trademark Office.

148. The OMPI Trademarks are valid and subsisting trademarks in full force and effect.

149. The OMPI Trademarks are distinctive and widely recognized by the consuming public. OMPI Products are sold and purchased through its Authorized Sellers throughout the United States, including in California.

///

150. OMPI is widely recognized as the designated source of goods bearing the OMPI Trademarks.

151. Defendants willfully and knowingly used, and continue to use, the OMPI Trademarks in interstate commerce for purposes of selling products bearing the OMPI Trademarks without OMPI's consent.

152. The products bearing the OMPI Trademarks that Defendants sell are not authorized for sale by OMPI.

153. Defendants' use of the OMPI Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the OMPI Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with OMPI when they are not.

154. Defendants' use of the OMPI Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine OMPI Products.

155. The products sold by Defendants are not, in fact, genuine OMPI Products. The products sold by Defendants are materially different from genuine OMPI Products because, among other reasons, they are not covered by the OMPI Guarantee and are not subject to, do not abide by, and interfere with OMPI's quality control requirements.

156. Defendants' unauthorized use of the OMPI Trademarks has infringed upon and materially damaged the value of the OMPI Trademarks, and caused significant damage to OMPI's business relationships.

157. As a proximate result of Defendants' actions, OMPI has suffered, and will continue to suffer, irreparable harm, as well as damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

158. OMPI is entitled to recover its damages caused by Defendants' infringement of the OMPI Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

159. OMPI is entitled to recover punitive damages because Defendants have acted with fraud and actual malice, or with such gross negligence as to indicate a wanton disregard of OMPI's rights.

## FIFTH CAUSE OF ACTION

### Intentional Interference With Contractual Relations

160. OMPI hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

161. This claim arises under the law of the State of California.

162. OMPI allows its products to be sold to end-user consumers in the United States only by OMPI itself and sellers whom OMPI has expressly authorized to sell OMPI Products.

163. OMPI has entered into valid and enforceable agreements with its Authorized Sellers to sell OMPI Products. These agreements specifically prohibit Authorized Sellers from selling OMPI Products to unauthorized resellers such as Defendants.

164. Defendants are not Authorized Sellers of OMPI Products and OMPI itself has not sold any OMPI Products to Defendants. Despite this, Defendants have sold and are continuing to sell a high volume of products bearing the OMPI Trademarks on the Internet. Upon information and belief, Defendants have purchased products from Authorized Sellers, under the guise of being a patient and end user of the products, for the purpose of reselling them on the Internet.

165. By purchasing products from Authorized Sellers and then reselling them on the Internet, Defendants caused and induced Authorized Sellers to breach their agreements with OMPI.

166. Defendants have known that OMPI's contracts with its Authorized

Sellers prohibit Authorized Sellers from selling products to non-Authorized Sellers, such as Defendants, whom the Authorized Sellers know or have reason to know are going to resell the products.

167. Defendants have known of this prohibition, among other reasons, because OMPI informed Vibrant Spot of this prohibition in a cease-and-desist letter it sent to Vibrant Spot on November 6, 2024. Defendants intentionally, knowingly, and willfully interfered with OMPI's agreements.

168. Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with OMPI's agreements with its Authorized Sellers by continuing to induce Authorized Sellers to breach their agreements and sell products to Defendants that Defendants resold on the Internet.

169. Invoices from Authorized Seller showing purchase of OMPI Products show that Defendants continued to induce Authorized Sellers to breach their agreements through transactions occurring on November 7, 2024, November 8, 2024, November 12, 2024, November 14, 2024, and November 15, 2024. Upon information and belief, Defendants continue to engage in this tortious conduct through present day.

170. Defendants acted knowing that they were interfering with OMPI's agreements with its Authorized Sellers, or with the knowledge that disruption of one or more of the contracts between OMPI and its Authorized Sellers was certain or substantially certain to be disrupted as a result of their conduct.

171. Defendants purchase of products from Authorized Sellers for the purpose of reselling them on the Internet has prevented performance of at least one or more of the contracts with OMPI's Authorized Sellers.

172. In interfering with OMPI's agreements, Defendants acted without justification and with a wrongful purpose. Defendants purchased OMPI Products from Authorized Sellers —and in so doing, instigated a breach of Authorized Sellers' agreements with OMPI—so that Defendants could unlawfully infringe upon and

materially damage the value of the OMPI Trademarks by reselling the products on the Internet, thereby committing an independent tort.

173. Defendants' actions have caused or were a substantial factor in causing OMPI to suffer, and continue to suffer, substantial harm, including loss of sales and damage to OMPI's existing and potential business relations with one or more of OMPI's Authorized Accounts, in an amount to be proven at trial, and Defendants' actions were a substantial factor in causing OMPI's harm.

**PRAYER FOR RELIEF**

WHEREFORE, OMPI prays for relief and judgment as follows:

A. Judgment in favor of OMPI and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, punitive damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B. Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i) Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the OMPI Trademarks;

ii) Prohibiting the Enjoined Parties from using any of the OMPI Trademarks in any manner, including advertising on the Internet;

iii) Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the OMPI Trademarks;

iv) Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the OMPI Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v) Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of OMPI's products, or any of the OMPI Trademarks;

vi) Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the OMPI Trademarks which associate OMPI's products or the OMPI Trademarks with the Enjoined Parties or the Enjoined Parties' websites;

vii) Requiring the Enjoined Parties to take all action to remove the OMPI Trademarks from the Internet, including from the website www.amazon.com; and

viii) Requiring the Enjoined Parties to destroy or return to OMPI all products bearing the OMPI Trademarks in their possession, custody, or control.

C. An award of attorneys' fees, costs, and expenses.

D. Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, OMPI demands a trial by jury on all issues so triable.

Dated: December 30, 2025

Respectfully submitted,

*/s/ Adam C, Sherman*

Adam C. Sherman (SBN 224979)
acsherman@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
2211 Michelson Drive, Suite 500
Irvine, CA 92612
Telephone: (513) 723-4680
Facsimile: (513) 723-4780

***Attorney for Plaintiff***
***Ortho Molecular Products, Inc.***